Louis B. Heller, J.
Defendant husband moves for an order modifying a judgment of separation dated December 9, 1964 which provides for payment of alimony to plaintiff wife in the sum of $190 per week allocated $130 for the wife and $30 per week for the support of each of two sons of the marriage. Plaintiff cross-moves for an increase.
Heretofore, by order dated June 8,1967, Mr. Justice Ventiera granted defendant’s motion to modify by reducing the support for the wife to $105 a week, and continuing the $60 per week for the two children, now aged 20 and 17% years respectively.
On appeal, the Appellate Division (29 A D 2d 769) remitted the entire matter to this court for the purpose of conducting a *979 plenary hearing de novo as to the present financial resources and needs of the parties and the children and all other facts relevant to whether any modification of the alimony and support provisions of the judgment of separation are warranted.
Pursuant to that directive, a hearing was held on May 27, 1968. The defendant is a certified public accountant. He produced his income tax returns for the years 1964 through 1967. These tax returns reflect his total income to be as follows:
1964 .......................$45,210
1965 .......................$29,243
1966 .......................$15,236
1967 .......................$12,577.
The reason for the dramatic drop in defendant’s income is that starting in 1965 (almost immediately after the judgment of separation had been entered), the Internal Revenue Service commenced an exhaustive, investigation relating to the defendant’s preparation of tax returns for his various clients. The investigation culminated in an indictment in 1967, charging that he had allegedly assisted his clients in preparing false tax returns.
This indictment is presently pending and the criminal trial thereof will probably take place in the near future. As demonstrated by defendant’s exhibits at the hearing, the defendant lost 27 clients who had paid him fees in excess of $33,000. The events which led to the defendant’s catastrophic diminution of his earning capacity are of such a nature that in all probability it will continue to decline, and should the indictment result in a conviction, his ability to pursue his profession may well come to an end.
The plaintiff seeks to counter the clear and convincing proof of defendant’s loss of earnings by pointing out to the court that defendant has substantial liquid assets with which to continue to pay the support previously ordered. The defendant testified at the hearing that his assets consisted of savings accounts totaling $63,000; United States Savings Bonds amounting to $62,500; Con Ed stock valued at $6,600; and $4,800 in a checking account. All in all, defendant’s ready cash assets amount to approximately $140,000, in addition to which he owns a 7%-room house where he resides alone, having an equity of about $20,000; and a 1967 Cadillac automobile newly purchased for $6,000.
The position taken by the defendant is that he is entitled to a reduction in alimony payments in the exercise of the court’s discretion by reason of his drastically reduced income without *980 regard to his assets. Plaintiff, on the other hand, contends that where, as here, the defendant husband has very substantial liquid assets, which have in nowise been diminished since the entry of judgment four years ago, and continues to maintain the same standard of living he maintained at the time the judgment of separation was entered, there is no basis for a reduction in alimony, even though there has been a reduction in income, especially so where the reduction is attributed to defendant’s own malfeasance.
It is further contended by plaintiff that she is entitled to an increase in alimony without regard to any change in defendant’s income, when, as in the case at bar, the defendant’s cash assets, which were accumulated during the long marriage of the parties, are more than sufficient to pay for the increased needs. Plaintiff claims the money was put aside, to use a cliche, as an umbrella for a rainy day, and now that the rains have come, defendant wants the umbrella for himself.
The defendant’s potential earning power for the foreseeable future is very bleak indeed. Aside from the cloud of the indictment, he is faced with the very real danger of going to jail. In any event, conviction, even if not followed by a jail term, may result in his losing his license as a certified public accountant, causing him to go into some other line of business which would in all probability require use of his capital.
At the present time the defendant’s future is clearly a question mark. If circumstances deprive him of the means of earning his livelihood as a certified public accountant, the only business experience defendant has ever had, and he is compelled to seek other means of supporting himself, not to mention his wife and children, such capital as he has would at least for the most part be required for that purpose. To whittle away his assets for the sole purpose of maintaining his family in a status not warranted by his income would ultimately deprive defendant of the very means which he could use for a new start in life.
Plaintiff cannot blithely shut her eyes and demand that she be maintained by payments decreed when defendant was free from his present problems. Her contention that the diminished income of defendant is self-impojsed is untenable. The cases cited by plaintiff deal with circumstances where a husband either gave up his job, stopped working, or deliberately went into some other line of business where his earnings were decreased. The court is very familiar with these ploys and has written often and at length about these “instant impoverishment ” self-denigration syndromes.
*981 However, that is clearly not the situation here. To suggest that defendant’s disaster is self-imposed, when he would in all likelihood use every power within his being or command to counteract or undo the professional catastrophe he now faces, is almost indecent.
It may be more than coincidental that the Internal Revenue investigation of the defendant followed immediately upon the termination of the separation action.
No precise mathematical formula can be devised to admeasure what proportion of defendant’s capital assets can be invaded to provide his wife with appropriate support under all the circumstances herein. The equities must be balanced. The court will not hold that defendant’s capital assets must be exhausted before an application for reduction in alimony will be entertained. On the other hand, the court cannot ignore defendant’s significant capital assets, and will, to a limited degree,- utilize such assets to complement the sum that would have been awarded to plaintiff were current income the principal criterion. The court’s award will be determined within the context of the total situation hereinabove stated.
In any event, the original decree provided for separate support for each child at a fixed amount. The older son having entered the Air Force the last week in May of 1968, the payment of $30 per week for his support is ordered terminated as of June 1, 1968.
The other son is now 17% years old. In view of defendant’s precarious situation, it would not be remiss for plaintiff, now that her two children are grown, to seek some type of gainful employment to augment her diminished support payments. There is some evidence in the file that plaintiff, a lady in her forties, has had at least a smattering of bookkeeping and secretarial experience.
Under all the circumstances and based upon the hearing and exhibits, the court’s decision is as follows:
Defendant’s motion to reduce alimony payments is granted to the extent that alimony for the wife is reduced to $110 per week, as of October 11, 1968. Furthermore, the $60 heretofore awarded for the support of the two children, is reduced to $30 per week, in view of the emancipation of the older son, as stated above. This is without prejudice to any later application for increased allowances should defendant’s fortunes improve.
Plaintiff has already received a substantial award for counsel fee on the trial of the separation action; a further fee on the original motion for modification; and yet another fee on the appeal to the Appellate Division. She is awarded a counsel *982 fee for her attorney’s services at the instant hearing and related matters in the sum of $300.
Plaintiff’s cross motion for an increase is denied.