M. Michael Potoker, J.
In this proceeding initiated pursuant to subdivision (c) of section 466 of the Family Court Act, petitioner seeks to modify the provisions of a Mexican divorce decree entered on January 30,1967, which confirmed a separation agreement entered into by the parties providing inter alia for the support and maintenance of petitioner and the two issue of the marriage.
Petitioner’s application is based upon a change of circumstances occurring since the entry of the divorce decree, including the increased cost of living as reflected by the Consumers’ Price Index maintained by the Federal Bureau of Labor Statistics, the increased needs of the children as they grow out of *767 infancy, the inadequacy of the amount previously agreed to by the parties, and the increased means of respondent father.
The initial question facing the court is whether or not a separation agreement containing an escalator clause providing for automatic upward modification of support payments for children incorporated into a Mexican divorce decree bars, as a matter of law, a subsequent action for upward modification based on change of circumstances under subdivision (c) of section 466 of the Family Court Act?
Respondent herein concedes that subdivision (c) of section 466 was enacted subsequent to the execution of the separation agreement and the entry of the divorce decree and might otherwise take precedence and authorize an action pursuant thereto. But, he argues, why disturb a decree which specifically covers the very protective measures intended by subdivision (c) of section 466 against the freezing of child support without regard to its increased needs or the increased financial means of the father.
The escalation clause in question (par. Thirteenth (d) of the agreement) reads:11 There shall be an additional annual amount payable to the Wife for the maintenance and support of the Wife and the children, i.e., twenty (20%) percent of the Husband’s gross earned income during 1967 and thereafter, (exclusive of dividends, interest, capital gains, and income from investments in real estate) exceeding $20,000 a year. In computing the amount so payable the Husband shall be credited on account thereof amounts paid, if any, for tuition or any other expenses for the education of the children, or either of them. Said amount shall be payable by the Husband on a monthly basis and shall be computed from year to year as determined by the Husband’s earned income in any year as reflected on his Federal income tax return. The Husband agrees to furnish to the wife a copy of his annual Federal income tax return before fifteen days have elapsed from the filing of the tax return in any year, but not earlier than May 1st commencing with 1968, so that she will be in a position to verify the amount of the Husband’s earned income in any year. ’ ’
Respondent relies heavily upon Matter of Halpern v. Klebanow (21 A D 2d 858) wherein the Appellate Division, First Department, limited the Family Court’s power to override a separation agreement to a compelling change of circumstances on the part of either party. The court stated as follows: 1 ‘ The parties herein entered into a separation agreement which contained carefully arrived at provisions regulating the custody, control and support of three minor children. The husband not only agreed to pay $3,000 per annum for each child but also assumed the pay *768 ment of any medical and dental expenses, the cost of attendance at private schools or college, and the cost of attendance at Summer camps. There is no claim that the husband did not meet his obligations under the separation agreement. Nor can there be any serious argument made that the stipulated provisions for support were not satisfactory and reasonable at the time the agreement was made. Although power resided in the Domestic Relations Court to order support for children, despite the existence of a separation agreement, that power was not to be.exercised where a separation agreement made adequate provision for support and there was no showing of a compelling change of circumstances of the respective parties.”
Although Matter of Halpern v. Klebanow (supra) was decided prior to the enactment of subdivision (c) of section 466 of the Family Court Act, respondent now submits that its interpretation is still valid and relevant. Respondent further argues that where as here the petitioner has not claimed that the terms of the 1966 agreement were not acceptable and reasonable when made and where the escalation clause provides for increased obligations for the respondent if his earnings were to increase the Family Court should not override the original contractual wishes of the parties and impose its own determination.
Respondent distinguishes the cases cited in petitioner’s memorandum, Matter of Handel v. Handel (32 A D 2d 946, affd. 26 N Y 2d 853); Matter of Schwartz v. Schwartz (48 Misc 2d 859) and Matter of Rudnick v. Rudnick (55 Misc 2d 532), since those cases involved situations in which no provisions for escalation were contained in separation agreements incorporated into foreign divorce decrees, and consequently the provisions of the Family Court Act were available for increased support in those situations in which the financial condition of a father is improved.
Respondent further points to the fact that under the escalation formula respondent expended more than twice the $3,000 annual base on behalf of the children for the calendar year 1969 without court action.
• Respondent’s contention is overruled both as a matter of law and as it pertains to the particular facts herein. Section 466 of the Family Court Act, as amended by chapter 355 of the Laws of 1965, effective September 1, 1965, specifically grants to the Family Court the power to entertain applications to enforce and modify alimony and support provisions of foreign decrees on the ground that there has been a subsequent change of circumstances and that modification is required. See Matter of Seitz v. Drogheo (21 N Y 2d 181), which upheld the *769 constitutionality of the amendment (subd. [c]) to section 466.
The very heart of the issue placed before the court is petitioner’s claim that the support provisions including the escalation clause do not adequately provide for the support and maintenance of her children in accordance with the means of respondent and that the change of circumstances which she puts forth is compelling enough for the court to grant an upward modification.
The basic right of a minor child to be supported by its parents is not affected by an agreement between the parties with respect to such obligation. Children are not chattels whose rights can be bargained away by parents (Matter of Bachman v. Mejias, 1 N Y 2d 575) and hence they cannot be bound by the support provisions contained in separation agreement (Moat v. Moat, 27 A D 2d 895; Kulok v. Kulok, 20 A D 2d 568; Matter of Goldberg v. Goldberg, 57 Misc 2d 224).
In Moat v. Moat (supra, p. 896) decided by the Appellate Division, Third Department, in March, 1967, the court stated as follows: “It is true, of course, that minor children are not parties to a separation agreement executed by their parents, and the courts are not bound by the support provisions contained in a separation agreement but are required to provide for the support and welfare of minor children as justice requires. (Domestic Relations Law, § 240; Family Ct. Act, § 461; Kulok v. Kulok, supra; Brock v. Brock, 4 A D 2d 747; Van Dyke v. Van Dyke, 278 App. Div. 446 [3d Dept.], affd. 305 N. Y. 671; Dolan v. Dolan, 271 App. Div. 851 [3d Dept.], affd. 296 N. Y. 860; Kunker v. Kunker, 230 App. Div. 641 [3d Dept.]; 16 N. Y. Jur., Domestic Relations, § 546.) ”
Since the obligation of the father to support his children is a basic and fundamental right belonging to the children, such a right cannot be abrogated or derogated by a prior agreement between the parents, and the Family Court is not bound by the support provisions of a separation agreement or of a foreign divorce decree incorporating said provisions where the evidence sustains the allegations of a change of circumstances since entry of the decree.
In Laumeier v. Laumeier (237 N. Y. 357, 364) the Court of Appeals said: ‘ ‘ The husband did not divorce his child, or dissolve his liabilities to it. And what are those rights? The child is entitled to the support and maintenance by its father.”
■Such agreements are however not invalid and courts will not arbitrarily disregard them. While the agreement is not binding on the court it will nonetheless be evaluated with the *770 best interests of the child as its criteria for acceptance (Emrich v. McNeil, 126 F. 2d 841; Pegram v. Pegram, 310 Ky. 86; “ Child Support — Protecting the Child’s Interests ”, Wade R. Bosley, Family L. Q., Section of Family Law, Amer. Bar Assn., vol. 4, No. 3, Sept., 1970).
Of course, once having been incorporated into a divorce decree without reservation, the agreement is no longer in question but is now part of a court order that is based upon the prevailing equities including a proven change of circumstances (Family Ct. Act, §§ 461; 466, subd. [e]).
The escalation clause is found to be defective on two other grounds: 1) its failure to contain a terminal facility for the resolution of any dispute arising out of its interpretation is sufficient ground for the court’s involvement where as here petitioner specifically questions the accuracy of the amount of respondent’s annual gross income; 2) the rights of the minor children are diminished because the computation of the father’s income is limited to 20% of his gross, earned income and excludes any income derived from dividends, interest, capital gains, and income from investments in real estate.
In determining a father’s means available for support of his children the court cannot limit itself to the father’s earned net income for the year but must also take in consideration all of his assets. Children are entitled to support in accordance with their father’s means and their station in life, and his capital shall not be exempt from invasion to a reasonable extent during child’s minority, to provide for their maintenance, support and education. (Matter of “Fletcher ”, 1 Misc 2d 25; Barclay v. Marston, 204 Misc. 656, affd. 283 App. Div. 658, republished 283 App. Div. 659; “Jenkins” v. “Jenkins”, 179 Misc. 905.)
In a support proceeding the Family Court may properly consider any and all assets which are or might be at the disposal of the respondent in proceedings before it (Matter of Chapman v. Chapman, 28 A D 2d 1028; Schacht v. Schacht, 187 Misc. 461, and cases cited; “ Zander ” v. “ Zander ”, 187 Misc. 557; 39 Am. Jur., Parent and Child, § 36, p. 636). In the Chapman case the Appellate Division affirmed a Family Court order which considered not only the respondent’s income, but also his capital assets and a certain trust fund of which he is beneficiary.
In Langerman v. Langerman (203 Misc. 230) the court held that the proceeds from a life insurance policy, generally constituting a nonrecurring item, must nevertheless be considered in estimating and in determining whether the amount to be *771 expended by respondent for Ms children is a fair proportion of his net income for the year.
Section 240 of the Domestic Relations Law likewise provides that an award for child support may be made out of the property of either or both parents.
It seems abundantly clear that an escalation clause which limits a father’s income to a proportion of his earnings and excludes other assets is violative of the law of child support and a deprivation of the rights of children to be supported in accordance with the means of their parent.
A substantial increase in the financial conditions of a father is also an independent ground sufficient to sustain an increase in support of his children (Family Ct. Act, § 413; Matter of Handel v. Handel, 26 N Y 2d 853; Matter of Goldberg v. Berger, 31 A D 2d 637; Matter of Swerdloff v. Weintraub, 26 A D 2d 826).
For the foregoing reasons the court will entertain petitioner’s application for an upward modification in child support pursuant to subdivision (c) of section 466 of the Family Court Act and will now address itself to the facts adduced herein by the respective parties.
The facts are undisputed. Petitioner and the respondent were married in 1958. There are two daughters now 10 years and 8 years of age respectively. A separation agreement was entered into between them dated January 19, 1967 followed by a Mexican divorce decree on January 30, 1967 incorporating by reference the terms of the aforesaid separation agreement.
"Under the separation agreement and the Mexican divorce decree, custody of the children was granted to the petitioner subject to the visitation rights of the respondent therein specified. Respondent agreed to pay to the petitioner for the support of petitioner and the two children ■ the sum of $6,000 annually payable in equal monthly installments of $500 each, with the further provision that the aforesaid amount be reduced by one half in the event of the remarriage of the petitioner. Respondent also agreed to pay an additional annual amount for the maintenance and support of the petitioner and children of 20% of the respondent’s gross earned income exceeding $20,000 per year with the proviso that the amount so payable by the respondent be credited with any amount paid by him for tuition or other educational expenses of the children or either of them.
By agreement dated as of January 1, 1968 the aforesaid separation agreement was modified for a period of one year, *772 commencing as of January 1, 1968 and ending December 31, 1968 wherein respondent agreed to pay during said one-year period the aggregate sum of $12,625 for the support and maintenance of the petitioner and the children, including private school and petitioner’s medical expenses.
Tfpon the expiration of the term of the modification of the separation agreement the provisions for the support and maintenance of the petitioner and children reverted to those contained in the original separation agreement. However, during the year 1969 respondent made payments slightly in excess of $11,7.50, $6,650 of what was made .to the petitioner for her support and that of the children, approximately $3,730 to the Fleming School for the children’s tuition and related expenses, and $1,367.50 for the children’s camps and clothing.
Petitioner remarried in December of 1969. Accordingly, as of the time of the hearing, under the terms of the separation agreement respondent was obligated to make payment tó the petitioner of the sum of $3,000 per annum for the support and maintenance of the children, or $250 per month in addition to any amount due under the escalation clause.
Petitioner’s present household includes herself, her present husband and the two children in issue. The parties live in a three-bedroom apartment with the children occupying two of the bedrooms. In reaching the expenditures reported in her alleged allocations between the petitioner and the husband on the one hand, and the two children on the other, petitioner claims that they were made on the basis of what was considered to be a reasonable division of general household expenses and on a 9 to 10 months’ basis rather than 12 to allow for periods when the children were away from petitioner’s home for visitations with the respondent and otherwise.
As appears from petitioner’s claims, the total sum required for the support and maintenance of the children, excluding the cost of private schooling and camp, is $1,347.84 per month for both children, or $673.92 per child. If private schools and camps are included, the figure is increased to $1,719.25 per month for both children, or $859.62 per child.
Petitioner contends that the provisions for the support and maintenance of the petitioner and her two daughters embodied in the separation agreement were predicated upon the then existing needs of the children, upon the then cost of fulfilling such needs, and upon the 1965 gross income of the respondent which was not in excess of $15,000.
*773 For the petitioner to prevail in this proceeding she must show a change of circumstances to have occurred since the time of the entry of the divorce decree, such as increased needs of the children or an increase in the income of the father and that modification is required (Family Ct. Act, § 466, subd. [c]; Zlotlow v. Zlotlow, 1 AD 2d 821, 6 A D 2d 685; Gevis v. Gevis, 141 N. Y. S. 2d 121; Alence v. Alence, 250 App. Div. 730; Matter of Handel v. Handel, 26 N Y 2d 853, supra).
Petitioner urges the court to take judicial notice of the fact that there has been an almost 30% increase in the cost of living since January, 1966 (see CCH, Labor Law Reporter, vol. 4, p. 12, 935).
An increase in the cost of living alone is insufficient ground for upward modification (Clarke v. Clarke, 7 A D 2d 831; Edelstein v. Edelstein, 26 A D 2d 522). In addition, the impact of that development on the petitioner’s expenses must be shown (Clarke v. Clarke, supra).
The petitioner has met the burden required of her and has satisfactorily shown that respondent’s current contribution is insufficient to meet the needs of the children.
Respondent while conceding the increased need of the children, resists the claims made on the ground that petitioner is presently married to an affluent husband and has thereby increased her standard of living and that he, petitioner’s former husband, should not be required to assist her in meeting the charge for her enormous change of circumstances under the guise of increased needs for the children. He points to, among other factors, that petitioner’s monthly rent has been increased from $233 prior to remarriage, to $1,000 a month after marriage.
That a former wife now remarried cannot expect her ex-husband to bear an unequal proportion of her present household expenses under the guise of child support is academic. Nor is it to be expected on the other hand that she continue to live as a married woman in the same manner she did as a divorcee. Petitioner maintained a $233 a month one-bedroom apartment prior to her remarriage. She and her present husband are now occupying a three-bedroom apartment with each child enjoying a bedroom for herself. Does respondent father deny the right of his children to separate bedrooms? The record of his contribution over the past years belies this assumption.
Petitioner concedes that respondent is not required to support his children in the style in which her present husband’s means or desires may dictate, if such level of support is beyond the respondent’s means.
*774 Nor does the court find the other expense items and their proportionate allocation vis-a-vis the children exorbitant and beyond the financial reach of respondent father.
Petitioner testified to all of the expense items and submitted that there is practically no item of expense, whether food, clothing, laundry, cleaning, education, art and music lessons, transportation, allowances, and entertainment, which have not substantially increased in the years intervening since the entry of the divorce decree in January, 1967.
Respondent testified that he does not oppose the education of his children in private schools. Taking into consideration the station in life of respective parents, the environment in which the children are being reared and the financial ability of. the father, I conclude that petitioner was justified in enrolling the children in private school and that respondent shall bear the costs of said tuition. The welfare of the children at this point calls for continuance rather than disruption of their education. It is to the credit of respondent father that he has in the past paid the expenses incurred for their private school and is not now insisting that their enrollment be suspended.
The court is mindful of the many decisions holding that a father is not required to pay for his child’s private school tuition where the community makes available to children through the public school system .the education which each child is entitled to as a matter of course unless he agrees to do so (“Earle” v. “Earle”, 205 Misc. 738; Borden v. Borden, 130 N. Y. S. 2d 831; Wagner v. Wagner, 51 Misc 2d 574, affd. 28 A D 2d 828; Ziesel v. Ziesel, 93 N. J. Eq., 153; 16 N. Y. Jur., Domestic Relations, § 619, p. 176).
This court does not subscribe to such a rigid principle of law. It favors a more flexible rule, one that takes into consideration the station in life of respective parents, the environment in which ‘children are reared and the financial ability of the father.
It is precisely those very prerequisites that prompted the court in Matter of Macfadden v. Macfadden (173 Misc. 85, revd. on other grounds 263 App. Div. 944, 290 N. Y. 568) and Barclay v. Marston (204 Misc. 656, affd. 283 App. Div. 658, republished 283 App. Div. 659, supra) to order a father to pay for private schooling of his children.
In the Macfadden case (supra), the precise question presented was whether an education in a private school was necessary. There was no question as to the respondent’s ability to pay for the tuition. The court there said (p. 86): “ The ques *775 tion of what are necessaries cannot be and should not be fixed by any hard and fast rule. * * * ‘The term “necessaries ”, as used in the law relating to the liability of infants therefor, is a relative term * * * and depends on the social position and situation in life of the infant, as well as upon his own fortune and that of his parents ’. (31 C. J. 1077) ”.
“ ‘ The best interests of the ward are to be subserved at all times ’ (Matter of Lapides, 144 Misc. 19, 26), and it seems that, considering the background of the children of the parties hereto, their interests were best served by their attendance at a private school ”, the court concluded (p. 86).
The court’s authority to order a father to pay for private school education stems from section 416 of the Family Court Act, which among others things, makes provision for the court to include in a support order “ the expense of educating a minor ”.
In Matter of Kotkin v. Kerner (29 A D 2d 367, 369) the court stated “ Ordinarily a father is not under a duty to provide a private school education for his child. But this does not mean that the Family Court lacks the authority to make an order directing a father to contribute to such an education if the circumstances warrant it.”
The circumstances herein well warrant it. The children have always attended private school with respondent’s approval and his financial means are sufficient to cover the cost thereof.
In response to respondent’s claim that his obligations to his children be based on his gross annual salary of $40,000 less reasonable expenses, petitioner argues that the income reflected in respondent’s tax returns- represents only a partial reflection of his present financial status. Petitioner points to respondent’s 1969 Federal income tax return, which indicates that respondent’s gross income for the year was $50,298, including $10,298 derived from interest and dividends or about $20,000 more than $31,716.96 which he earned from all sources in 1967. Since this income includes almost $10,000 in capital gains, only one half of which were reportable, the actual moneys received by the respondent during the year, excluding any return of capital investment, totaled approximately $60,000 as against $31,700 in 1967.
Petitioner further testified that the terms of the separation agreement were predicated on respondent’s 1965 earnings which she believed to have been about $15,000.
Petitioner also disputes respondent’s actual net worth and his salary which she claims represents his unilateral, arbitrary determination and bears no true relationship to the financial *776 status of his wholly owned corporations. Petitioner insists that respondent fixed his salary on the basis of his personal needs and his legal obligations as defined in the separation agreement. She further argues that respondent has seen fit to maintain a net reserve in his business enterprises far beyond safety precautions and moneys used for capital expansion.
Respondent is the chief executive and sole stockholder of six corporations and has an interest in two other corporations. The consolidated financial statement of his enterprises for 1969 indicates aggregate gross income of $1,141,740, net income of $134,325 which when added to retained earnings of $209,858 (as of Jan. 1, 1969) results in retained earnings, as of the end of 1969, of $344,183. Nor have the corporations declared any dividends in 1968 and 1969.
Respondent conceded that although he determines his own salary and set it at $40,000 gross for 1969, he has not done it arbitrarily without recourse to the financial status of his business. He testified that the amount of the cash reserve was necessary to guarantee taxes and miscellaneous operating expenses, for credit purposes and rating, and for capital expansion. He does not deny that his business enterprises have improved considerably since 1966 from annual gross sales of $300,000 to over one million dollars in 1969. He adds however that the cost of sales has likewise increased fivefold.
Respondent’s true income lies somewhere between the divergent figures advanced by the adverse parties. There is no doubt that respondent’s income is augmented by diverse 11 fringe ’ ’ benefits, such as the unlimited use of a company owned automobile fully maintained at company expense, travel and entertainment expenses, use of credit cards, a company paid pension fund with $6,000 having been deposited in his account in 1969 and interest and dividends from investments. His financial records including personal and corporate tax returns further indicate that respondent can increase his salary to the extent that his annual net income would total approximately $25,000 exclusive of additional income derived from investments and the value of his fringe benefits.
In determining the amount of support required of respondent father for his children, the court based its finding on the evidence of the scale of living to which the children are entitled by the father’s station in life, the particulars of the demand for the maximum award, the father’s assets, earnings and other means, and his reasonable expense and obligations.
*777 From all of the evidence adduced I find that petitioner has proved by a fair preponderance of credible evidence that the needs of the children and the means of the respondent have both increased since the entry of the divorce decree to the extent that an upward modification is warranted. The court has given due consideration to the additional expenses incurred by respondent during the “ liberal ” visitation periods spent with his children.
The support provisions of the divorce decree are hereby modified as follows:
1. Commencing September 1, 1970 the monthly payments for support and maintenance of each child shall be increased to $350 for a total of $700 per month for both children.
2. Beginning with the school term of September 1, 1970 respondent shall pay directly to the private school in which the children are enrolled the full amount of their tuition, cost of school uniforms, fees and books, but in no event shall his contribution exceed $3,730 per school year.
3. Commencing with the summer of 1970 respondent shall also pay directly to the camps involved a sum not to exceed $1,500 for summer camp for both children.
4. Respondent is further directed to continue in full force and effect Blue Cross, Blue Shield, Major Medical, medical and dental coverage pursuant to paragraph ‘ ‘ Fourteenth ’ ’ of the separation agreement.
5. Petitioner is awarded counsel fees in the amount of $2,500 plus $174.39 disbursements. Respondent is directed to pay said legal allowances directly to the attorneys for petitioner in two equal installments; the first payment to be made no later than December 21, 1970 and the remainder no later than January 21, 1971.
It is well settled that necessaries are not limited to food, clothing, habitation, and education (Family Ct. Act, § 438; Dravecka v. Richard, 267 N. Y. 180; Matter of Vanderbilt, 129 Misc. 605, affd. 220 App. Div. 830; Matthews v. Matthews, 30 Misc 2d 681, mod. 18 A D 2d 830, affd. 14 N Y 2d 778), but also include, among other things, the right of counsel. There can be no doubt, as a matter of law, that legal services rendered to an infant to enforce his legal right is a necessary for which his father is liable (Elder v. Rosenwasser, 238 N. Y. 427; Matter of Kaufman [Gonzalez], 272 App. Div. 323, affd. 297 N. Y. 814; Domestic Relations Law, § 237, subd. [b]).
This order is, of course, subject to modification in the light of future diminution or increase of the respondent’s income and the greater proven needs of the children as they grow older.