OPINION OF THE COURT
Mortimer Getzels, J.
Petitioner commenced this proceeding for support of herself and two children. During its course respondent, alleging that the children no longer resided with his wife, cross-petitioned for contribution to their support and school tuition. A motion to consolidate the petitions was granted. There was voluminous testimony on May 24, June 2, June 16, July 20, September 14 and November 16, 1978 with an avalanche of exhibits.
The parties were married on August 29, 1961 at Staten Island, New York. The issue of the marriage are Marc, born September 30, 1961 and Brad, born April 10, 1963. The parties separated in December, 1977 when, after a long history of marital discord, the husband left the home.
Petitioner testified that prior to their separation respondent paid all bills. They dined at expensive restaurants. The family enjoyed summer and winter vacations and weekend trips. The children were sent to sleep-away camp. In 1977 they lived on a scale of $5,000 a month.
Up to December, 1975 petitioner was employed as a manicurist at Bonwit Teller where she earned $20 a day plus a percentage of the business she brought in. Before that she was a manicurist at Saks Fifth Avenue, Elizabeth Arden and *620 Henri Bendel. With invested earnings and $10,000 she had from before the marriage she opened custodial accounts for the children, which as of March, 1978 amounted to $82,671.76.
Petitioner’s testimony that she was unemployed after December, 1975 was controverted by two investigators. Delores Edwards testified that she made an appointment for a manicure for December 23, 1977 at the Louis M. Beauty Salon, 53rd Street and Madison Avenue, New York, New York, asking for petitioner by name. She identified petitioner in court as the person who did her nails on that day. They chatted during the manicure. Petitioner told her that she was working at Louis M. 11 months, earning $2.65 an hour plus tips for about $200 a week. She had done beauty culture work for six years and on other jobs made $400 per week. Ms. Edwards paid $5 for the manicure and gave petitioner a $2 tip.
Rosita McAdams testified that she received manicures from petitioner at the same salon on February 3 and February 24, 1978, having asked for petitioner when she made the appointments. Ms. McAdams told petitioner that her sister was looking for a job as a manicurist and asked about salary. Petitioner said that she made $100 a week and received 50% commission on each customer. She worked five days a week from 9:00 a.m. to 5:00 p.m., averaging one customer every half hour. Ms. McAdams tipped petitioner $5 on February 3 and realizing that she had overtipped, on February 24 gave petitioner only $1.
The court also notes that in her application to open a custodial account in the Drydock Savings Bank on January 3, 1977 petitioner listed as her business address "La Pel Beauty Salon”.
Respondent minimized the parties’ life style. The last vacation they had was three or four days in Puerto Rico in 1977. There was no vacation in 1975 and 1976. In 1974 the family spent a week in the Poconos at Christmas. They went to the theatre once in 1976 and once in 1977. When they ate out on Sundays it was in local Chinese restaurants. Petitioner worked regularly in beauty salons for five years and banked all of her earnings.
The children presented problems. Marc was truant from high school. However, he was entering Boston University in September, 1978. Brad was doing poorly in school. Although petitioner wished to send Brad to a private school recom *621 mended by the educational records bureau after he was tested, respondent kept him in public school on the advice of the psychologist at the Jewish board of guardians where the boy was undergoing therapy for two years. Sometime prior to the hearing on September 14, 1978, Brad went to live with respondent who enrolled him in the Baldwin School, a private institution. (By affidavit of the respondent sworn to the 2d day of February, 1979 and a letter from his attorney dated February 9, 1979 the court was informed that Marc dropped out of Boston University after one semester and was living in the home of a friend in New York City and that Brad was doing well at the Baldwin School.)
Respondent is engaged in the business of importing and distributing electronic calculators and digital time pieces as an officer and stockholder of Webster Merchandise, Ltd. (Webster) and C. M. I. Products, Inc. (CMI). According to its accountant, Webster, which uses the trade name Global Marketing, had a gross income of $3,000,000 for the year ending September, 1978. Respondent drew a salary of about $22,000 from Webster. He claimed that he had no other income or resources. He admitted, however, that some of her personal bills were paid through the business.
Leon Lebensbaum, a CPA and lawyer with a background of 17 years of experience investigating tax fraud for the Internal Revenue Service, examined the books and records of Webster and CMI on behalf of petitioner over a period of four days. The object was to determine respondent’s salary and direct compensation as well as his expenses. After analyzing the corporations’ and respondent’s travel and expense accounts and the payroll records it was his conclusion that respondent’s salary of $22,000 plus the economic benefits of entertainment, travel, car rental and personal expenses paid by Webster and CMI amounted to a total compensation of $60,000 a year.
On the basis of the credible testimony the court finds that (1) petitioner earns or is capable, of earning $15,000 a year as a manicurist and controls liquid assets in excess of $80,000 and (2) respondent enjoys an annual income of $60,000.
Is petitioner entitled to support? Is she under an obligation to contribute to the children’s support and the cost of their education?
Section 412 of the Family Court Act codifies the bedrock New York law that a husband is chargeable with the support of his wife (Haas v Haas, 298 NY 69; Goldman v Goldman, 282 *622 NY 296). The statutory scheme continues the husband’s obligation through divorce, separation or annulment (Domestic Relations Law, § 236; Family Ct Act, §§ 464, 466).
But an earthquake has virtually demolished the whole structure. In Orr v Orr (— US —; NYLJ, March 7, 1979, p 6, col 1) the Supreme Court of the United States held that alimony statutes which provide that husbands, but not wives, may be required to pay alimony upon divorce are unconstitutional as a denial of equal protection. Sex is not a proxy for need: there is no difference between a needy male and a needy female.
"A gender-based classification which, as compared to a gender-neutral one, generates additional benefits only for those it has no reason to prefer cannot survive equal protection scrutiny.
"Legislative classifications which distribute benefits and burdens on the basis of gender carry the inherent risk of reinforcing stereotypes about the 'proper place’ of women and their need for special protection.” (Orr v Orr, supra, p 6, col 4.)
Provisions for support must be couched in the gender neutral term "spouse”. The conclusion is inescapable that it is now the law of the land that only a spouse in actual need is entitled to support. Petitioner is an attractive woman of 50 who looks younger than her age, in good health, financially astute, engaged in a skilled trade. Unencumbered by children, she is the antithesis of a needy spouse.
Both spouses are responsible for the support of their children according to their respective means. (Matter of Miller v Miller, 61 AD2d 774; Tessler v Siegel, 59 AD2d 846; Stern v Stern, 59 AD2d 857; Hebard v Hebard, 58 AD2d 883; Matter of Carter v Carter, 58 AD2d 438). Capital is not exempted from invasion (Matter of Kern v Kern, 65 Misc 2d 765).
Section 416 of the Family Court Act authorizes the court to include in an order of support the expense of a private school education. (Matter of Kern v Kern, supra). It may also provide for the expense of a college education if it finds that circumstances warrant it and that it would be in the best interests of the child (Matter of Weingast v Weingast, 44 Misc 2d 952; Matter of Hahn v Hahn, 78 Misc 2d 585). The court takes judicial notice of the increased value that society places on higher education for its own sake as well as a vehicle for success in the world.
*623 While originally respondent opposed sending Brad to a private school, he had a change of heart and mind when Brad came to live with him and enrolled him at the Baldwin School, presumably in the boy’s best interests. There is nothing in the record to indicate that either party opposed sending Marc to college; the problem appears to be to get him to stay there. Estranged though they are, petitioner and respondent should join in a resolve to provide their sons with the best available education to insure them a proper start in life. The court holds tuition fees to be a necessary element of support.
On the basis of the parties’ respective incomes the court finds that it would be equitable for petitioner to contribute 20% of the children’s support and respondent 80% (Matter of Hudis v Hudis; 64 AD2d 653). Petitioner is directed to utilize funds in the custodial accounts to pay her share of tuition fees.
Petitioner’s application for support for herself is denied. Respondent’s cross petition for contribution is granted to the extent of setting it down for hearing before me in the Family Court, Queens County, Part II, on April 27, 1979 to assess the children’s needs and tuition costs so that the appropriate orders may be made.
The application by petitioner’s attorney for a counsel fee is denied as petitioner has ample resources to pay her lawyer (Matter of Hudis v Hudis, supra; Fishman v Fishman, 57 AD2d 606; Kann v Kann, 38 AD2d 545). The application for an allowance of accountant fees is denied as there is no statutory provision for it (Matter of Miller v Cole, 68 Misc 2d 8).