*436 OPINION OF THE COURT
Bentley Kassal, J.
After trial of this action for divorce, the issues remaining to be resolved are the support for the three children, who are 16, 21 and 23 years of age, and the plaintiff's application for a division of two life insurance policies on the husband’s life of which she claims to be the equitable owner.
I. SUPPORT FOR CHILDREN
A. Ability of Husband to Provide Support
There are three children of this marriage: Tracy, 23 years old; John, 21 years old and Kristina, 16 years old.
It is not disputed that during the 20 years that the parties lived together, they maintained an extremely luxurious lifestyle and they raised their children accordingly, including, inter alia, educating them at the finest, high-tuition private schools, taking them on expensive vacations and ski trips and encouraging and funding expensive hobbies and other extracurricular activities, including ballet and photography lessons and horseback riding, as an illustration. When asked about the fact that he had purchased a horse for his daughter and stabled it at a cost of $2,640 a year, the father stated matter-of-factly that he bought the horse because she wanted it, she was a wealthy young girl, and it was part of her lifestyle.
The husband was "precluded from opposing plaintiff’s claim that he can afford to pay $200 per week for child support by a prior court order. Nevertheless, considering his annual income of at least $50,000-$62,000 for the last few years (and that he has been expending moneys for others for whom he has no legal obligation), it is clear that he would be capable of providing support in excess of this sum, but this is not in issue since the wife seeks only $200 a week as his total contribution to the support of the children, agreeing to provide the remainder herself. This is not an insignificant concession on her part since her uncontroverted proof was that the cost of maintaining her youngest child, alone, is about $25,000 a year, including the child’s share of a very large and expensive co-operative apartment on Sutton Place, and her affidavit, in compliance with section 660.22 of the Rules of the Supreme Court, New York and Bronx Counties (22 NYCRR 660.22), dated December 26, 1975, without contest, claims weekly expenses *437 for the three children to be $1,320 (which is credible in these circumstances).
B. Relative Obligation of Support of Each Parent
The traditional and statutory notion (Domestic Relations Law, § 32) that a father has the primary obligation to support his children neither reflects the realities of modern life nor complies with our constitutional requirements of equal protection. Nor is such a construction consistent with the statutory dictates of section 240 of the Domestic Relations Law which requires that support be determined "having regard to the circumstances * * * of the respective parties” and "out of the property of either or both of its parents.” (Emphasis added.)
There have been recent judicial constructions of sections 413 and 414 of the Family Court Act which require apportionment of the costs of child support between both parents, according to their respective means and responsibilities (Matter of Carter v Carter, 58 AD2d 438; Tessler v Siegel, 59 AD2d 846). These rulings are so closely analogous to this case that they must be considered as controlling with respect to section 32 of the Domestic Relations Law. Accordingly, there is no necessity for the notice to the Attorney-General normally required by section 71 of the Executive Law.
Having due regard for the circumstances of this case and of the respective parties, justice requires that each parent have equal financial responsibility for providing the necessary support for their children. While the mother has agreed to limit the father’s total obligation even further (her agreement to pay all support in excess of $200 per week), it is, nevertheless, necessary to determine his obligations to support each child individually since, by reason of age and other factors which will be discussed, the period and amount of support will differ for each child.
C. Kristina — 16 years of age
The mother has testified to a schedule of direct expenses for Kristina, in the amount of $12,600 including $4,500 for private high school tuition, and indirect expenses in a similar amount. In substance, the father raised no questions with regard to the actual amount spent on his children, stating that they had been spoiled by both parents.
(i) Obligation to Provide Private School Education
While ordinarily, a father has no duty to provide a private high school education for his children, the court is not *438 without authority to direct such a contribution. (Matter of Kotkin v Kerner, 29 AD2d 367; Domestic Relations Law, § 240.)
The circumstances of this case and of the parties and the best interests of the child, including, inter alia, the following factors, make such a direction appropriate here:
1. Both parents can afford such an expense. (Cf. Matter of Matthews v Matthews, 14 AD2d 546; Matter of K. v K., 83 Misc 2d 911, 919, and the cases cited thereat.)
2. Both of the other children attended similar private schools.
3. The child was enrolled in the school while her father was still a member of the household, did consent thereto and, in fact, he paid the tuition until he left.
4. The Dalton School, which the child attends, has a general reputation for providing an excellent education.
5. The child has already attended the school for many years and to take her out now would be very disruptive to her education.
6. The child developed friendships with her classmates.
7. This is the standard of living to which the children are accustomed. (Cf. K. v K., supra.)
On the basis of all of the evidence presented having regard to the circumstances of the case and of the respective parties and the best interests of the child, justice requires a finding that the reasonable sum for the support of this child is $17,500 of which the father shall be responsible for one half thereof, $8,750.
D. John — 21 years of age
The initial question with respect to the mother’s application for support for John is the father’s contention that his obligation has terminated by reason of fact that the son, now 21 years, has attained his majority.
(i) Duty to Support Children Beyond Age 21
The law of this State is clear that absent exceptional circumstances, the father’s obligation to support a child terminates when the child becomes 21. (Seaman v Seaman, 37 AD2d 551, 552; People ex rel. Gardner v Gardner, 39 AD2d 735, affd 32 NY2d 884; Mario v Mario, 51 AD2d 428, 431; Lynch v Lynch, 47 AD2d 928; Greenberg v Greenberg, 27 AD2d 952; Sloan v Sloan, 286 App Div 1102; Lair v Lair, 276 *439 App Div 775.) It is equally clear that the fact that the child is attending college is not, in itself, such an exceptional circumstance to justify a support order beyond age 21. (Seaman v Seaman, supra; Greenberg v Greenberg, supra; Sloan v Sloan, supra; Halsted v Halsted, 228 App Div 298.)
While I have found no reported decisions clearly spelling out what constitutes the exceptional circumstances for support beyond the age of 21, in my judgment, the proof adduced in this case, including, inter alia, the following factors should cross the threshold:
1. Both parents are college graduates. In fact, the father has received extensive postgraduate professional education. (Cf. Kaplan v Wallshein, 57 AD2d 828.)
2. Both parents can clearly afford to support the children through college, including sending them to private universities. (Cf. Matthews v Matthews, 14 AD2d 546, supra; K. v K., 83 Misc 2d 911, supra; Kaplan v Wallshein, supra.)
3. The two oldest children are attending college, having enrolled while the father was still a member of the household.
4. The children have sufficient academic ability to go to college. (Cf. Kaplan v Wallshein, supra.)
5. The children have attended private college preparatory high schools.
6. The children have been raised in an economic environment where it would be unreasonable for them to expect that their parents would not see to their financial needs at least through college. (Cf. K. v K., supra.)
7. The children have been raised among other children and socialized in a setting where it would be unusual for them not to go to college.
8. The children have never been denied anything, no matter how extravagant, as long as their parents have had ample resources. (Cf. K. v K., supra.)
9. In their cultural, social and economic background, a college degree is a prerequisite for suitable employment in the competition for present day living. (Cf. K. v K., supra.)
Clearly it would be easier to come to a conclusion based upon traditional rules of support if the wife and children were destitute and in danger of becoming wards of the State. That is certainly not the case here. In fact, I am certain, and I find, that the wife alone has more than sufficient means and desire to provide all of the support these children will need. But, *440 none of these facts absolves the father of his duty to provide appropriate support for his children and to fairly share this obligation with his former wife pursuant to section 240 of the Domestic Relations Law.
Should the youngest child, Kristina, choose to attend college, this same reasoning should apply, assuming the situation has not significantly changed. Since no request is made for support of any of the children beyond college, it is unnecessary to determine whether the children would be entitled to support to enable them to receive a postgraduate education.
As to the specific support requirements for this child, the sole evidence presented established that room, board and tuition expenses at Sarah Lawrence College totaled $7,600 a year. Since no evidence was presented as to other expenses, to this should be added his pro rata share of the food, apartment maintenance, etc. I find his share thereof to be $2,400 a year, making a total of $10,000 for his expenses. Therefore, on the basis of all of the evidence presented having regard to the circumstances of the case and of the parties and to the best interest of the child, I find the father’s obligation for the support of this child to be one half thereof or $5,000 annually.
E. Tracy — 23 years of age
Since the wife failed to prove specific expenses for Tracy’s maintenance and support, no award may be made.
II. INSURANCE POLICIES
The wife seeks an order requiring the assignment to her of two life insurances policies presently owned by the husband, as a division of marital property pursuant to section 234 of the Domestic Relations Law, upon the theory of equitable ownership and the imposition of a constructive trust.
The two policies in question, in the face amount of $100,000 and $50,000 respectively, insure the life of the husband, who by the terms thereof is also the owner of the policies. The present named beneficiary is the wife, with the children as contingent beneficiaries.
The wife proved, without controversy, that she wrote checks from her personal account for almost every premium on the $100,000 policy and shared to some undetermined extent in the payment for the other $50,000 policy. However, the understandable financial arrangement between the parties is com *441 plex and makes a precise allocation of payment and, more important, the true sources of such moneys, almost impossible.
It is undisputed that the husband who has earned fairly large sums, as an actor, spent his entire income during the marriage to pay family expenses. He testified that he and his wife had a tacit agreement that he would spend his entire income and she would save her estate for their savings. This was not denied. As a consequence, none of his earnings were saved since the family relied on the wife’s substantial assets and expectancies for security and, in addition to all of his income, they used some of her income to pay the expenses for their luxurious style of living. In fact, the husband had claimed in a prior affidavit that he left the marital residence in search of work because he could "no longer stand the indignity of being supported by her”. He further stated: "Plaintiff always assured me that we could live on her income, and in fact, that is exactly what we did.”
Thus, the mere fact that one party or the other wrote specific checks from identifiable bank accounts for the insurance premiums is not controlling since there is no way to determine whose money had been used for which living expenses when the parties commingled their combined income and lived at a scale of $100,000 annually, which they did just before the separation.
While section 234 of the Domestic Relations Law authorizes the court "to determine any question as to the title to property arising between the parties”, there is little authority to guide the court in the typical case, as here, where the marriage was treated as a partnership by the parties. The fact that the parties, while married, dealt with each other on a basis of mutual trust and co-operation, commingling funds and keeping few, if any, records, should not prevent the court from carrying out its authority equitably, pursuant to section 234 of the Domestic Relations Law so as to achieve fairness.
While there are no presumptions to aid the court in this regard (W. v W., 89 Misc 2d 681), certain factors, including the following, must be considered:
(1) While the husband was clearly the legal owner of the policies, pursuant to their terms, the wife, and contingently the children, were the beneficiaries. This was so from the original application for insurance and continued throughout the period the policies were in effect and the parties remained together.
*442 (2) The parties were jointly involved in obtaining the insurance. In fact, the insurance policies in question were obtained through the wife’s brother.
(3) Both parties paid premiums on the policies.
(4) The policies were treated as joint property during the marriage.
(5) The policies were apparently the only significant assets jointly acquired by the parties during the marriage.
On the basis of the above factors, equity demands that both parties be permitted to retain half of all the parties’ life insurance policies.
The court is aware that in 1975, the ownership of a third policy, in the face amount of $100,000, was transferred to the wife by the husband, that the wife paid premiums on the policies after the husband left the marital residence, and that the husband has borrowed a substantial amount against the cash surrender value of some of the policies.
Therefore, the judgment to be settled shall provide for the following (see Rosenberg v Rosenberg, 42 AD2d 590):
1. The ownership of all the $250,000 of life insurance shall be divided between the parties by assignment by the husband and that amended policies be applied for and issued, if possible, to effect this end, so that each party shall retain life insurance policies in the face amount of $125,000.
2. The husband shall return to the wife one half of the sums borrowed against the policies or make a financial arrangement to the same result.
3. The difference between the amounts paid by the parties for premiums since the husband left the marital home in November, 1974, shall be returned to the party who paid the greater portion to effect an equal sum.
4. After the above steps have been taken, the party retaining policies with a greater cash surrender value shall return one half of the difference in surrender values to the other party.
[Portions of opinion omitted for purposes of publication.]