■ JUDITH ROOME, Appellant, v NORMAN S. ROOME, JR., Respondent. — Order, Supreme Court, New York County (Shainswit, J.), entered on October 16, 1980, affirmed, without costs and without disbursements. Concur — Ross, J. P., Carro, Silverman and Milonas, JJ.

Lupiano, J., dissents in part in a memorandum as follows: Plaintiff, Judith Roome, appeals from that part of an order of Special Term, entered October 16, 1980, which denied her application to punish defendant for contempt and to direct defendant to pay for the college tuition and expenses of the parties' daughters. Plaintiff and defendant were married in New York on January 24, 1959. There are three children born of this union: Victoria, born on June 10, 1961; Loretta, born on October 17, 1962, and Norman, born on November 27, 1967. On June 16, 1977, plaintiff and defendant entered into a written stipulation of settlement which was subsequently incorporated into and survived the subsequent judgment of divorce entered on July 20, 1977 by the Supreme Court, New York County. The stipulation covered various aspects of support, maintenance, alimony, private school tuition, medical expenses, dental expenses, camp expenses, the division of the parties' marital property and custody of the infant children. The parties were awarded joint custody of the three children, and it was agreed that the two daughters would reside with plaintiff and the son would reside with defendant. In the instant motion, plaintiff sought an order punishing the defendant for contempt because of his willful failure and refusal to pay the private school, medical and hospital bills totaling $3,790, and college and attendant expenses of the infant children (two daughters) pursuant to the stipulation dated June 16, 1977 and the divorce judgment entered July 20, 1977. Special Term determined that plaintiff was correct in asserting that defendant had willfully failed and refused to pay medical and hospital and private school bills in the amount of $3,479.08 (arrived at by deducting from the sum of $3,790 claimed by plaintiff[1] the sum of $310.92 representing a bill of The Chapin School paid by defendant). Neither side appeals from this aspect of Special Term's determination. Special Term denied contempt relief "since there is no indication that plaintiff will not be able to enforce the judgment [the money judgment of $3,479.08 allowed by Special Term] against defendant, who is *a surgeon of substance*" (emphasis supplied). Special Term denied plaintiff's request to direct defendant to pay college tuition for their two daughters on the basis that "a careful reading of the stipulation * * * shows that *defendant never agreed to undertake such payments. Absent such a clear agreement* to pay college tuition, the Court *cannot* direct defendant to make such payments" (emphasis supplied). It is this legal observation which is at the heart of the instant appeal. Before embarking on an analysis of this legal point, the historical background, in terms of the

1. Plaintiff bases the amount of $3,790 claimed on the following expenses: $3,000 in medical and hospital expenses for Victoria owed Payne-Whitney Clinic; $40 doctor's bill for Loretta owed Dr. Francis Cohen; and $750 private school expense for Victoria owed Friends Seminary.

litigation between these parties and of the human tragedy represented by the printed word, is set forth in relevant part. Defendant is a successful vascular surgeon, who, in 1976, apparently had a gross income of $108,761 and expenses of $44,072. The children have always attended private school. Both girls attended The Chapin School (a secondary school), appear to be of above-average intelligence, have been accepted at college (Victoria at Goucher, and Loretta at Sarah Lawrence), and are highly recommended by their schools for college. Each has achieved high scores on her SATs. It is asserted by plaintiff, and not denied by defendant, that in a memorandum decision, dated January 12, 1976, adjudicating the defendant in contempt for failing to pay *pendente lite* alimony arrears, the Supreme Court (Baer, J.) declared: "The court finds shocking defendant's disregard of his obligation to pay alimony to plaintiff, when he admits to earnings in excess of $100,000 per annum". Subsequently in 1978, defendant arbitrarily refused to consent to his daughter Loretta's attendance at summer camp, despite the provision in the stipulation, dated June 16, 1977, whereby he agreed "to pay for the summer camp expenses for each of the children, should that child desire to attend summer camp". In the report of the special referee on this issue, it was noted that the summer camp was initially selected by the defendant and subsequently was attended by the children. In February, 1978, the defendant unilaterally canceled the reservation made for another camp season for Loretta. In April, 1978, Loretta went to see her father and he continued in his refusal. He based his refusal on the assertion that Norman, the parties' son, lost weight while attending said camp. The referee found that defendant's "testimony does not have the ring of truth * * * He admitted his sole contact with his daughter was a fleeting visual contact on one occasion prior to their meeting in April 1978. He never visited the camp * * * Additionally, the fact that defendant did not come forward with any affirmative alternative suggestions as to summer camp establishes that his refusal to consent was not made in good faith or that he had the best interest of daughter at heart." The referee's report was confirmed by Special Term (Blyn, J.) in a decision dated November 3, 1978 and embodied in an order filed on such date. In its decision the court rejected defendant's argument that there was no consultation in advance *by the parties* and therefore he is not bound by the stipulation. The court noted that the affected daughter, Loretta, consulted with her father respecting his cancellation. Defendant's strict construction of the stipulation that it had to be plaintiff who consulted with defendant and not one of their children was viewed as without merit. Special Term stated: "The relevant language merely requires that defendant be consulted. Such consultation by his teen aged daughter was 'sufficient compliance * * * The court holds defendant in contempt for failure to comply with the terms of the judgment of July 20, 1977. He may purge himself of such contempt by paying to plaintiff the sum of $1,052.00, representing the summer camp expenses for the daughter". Both daughters received strong recommendations from The Chapin School. The scholastic achievement of the oldest child, when viewed against the emotional and psychological trauma of her parents' disintegrating marriage and subsequent divorce, as gleaned from the record herein, is especially impressive and noteworthy.[2] The psychiatric collapse of this girl

2. The oldest child suffered a nervous breakdown in the context of her parents' marital problems. Nevertheless, she succeeded in achieving a Regents diploma and high marks on the college board admissions testing program. For informational purposes there is now set forth the contents in relevant part of the letter of recommendation written by the headmistress of The Chapin School on the oldest child's behalf. No reflection on the merits, other than the fact that such letter was written, is expressed:

necessitated treatment at the Payne-Whitney, New York Hospital, and defendant heretofore refused to pay the expenses for his daughter's rehabilitation at such hospital. While indirectly acknowledging that Payne-Whitney was a proper facility for his daughter, defendant justifies his prior refusal on the ground that he was not consulted by plaintiff. This complaint echoes defendant's prior justification for his refusal to send the second child, Loretta, to summer camp, which issue was resolved by the court as above mentioned. Similarly here, Special Term has directed defendant to pay this medical expense. Defendant complains that "plaintiff in attaching numerous supporting documents to her papers * * * has attempted to create the false impression of [his] lack of concern for [his] daughter's welfare." He acknowledges that plaintiff did extend an "invitation to discuss the issue of college education," but avers that neither his daughters nor plaintiff further communicated to his attorney's request by letter dated February 22, 1980 to discuss the matter. Plaintiff responds that her counsel answered such letter and made numerous calls in an endeavor to amicably resolve the situation — all to no avail. Study

"THE CHAPIN SCHOOL
"100 EAST END AVENUE
"NEW YORK, NEW YORK
"10026

"VICTORIA JUDITH ROOME                                    RECOMMENDATION

" 'Tori' entered The Chapin School in Class Six. Her younger sister (by a year) entered the School in Class Five. During Tori's Middle School years her mother was not well, requiring serious surgery, and the uncertainties this precipitated were reflected in an academic record not at all at a level Tori's potential promised. Dr. Roome, a busy surgeon, was not heavily involved with the children. Ultimately, Mrs. Roome recovered from her physical problem but then went into an emotional breakdown complicated by alcoholism as a result of a deteriorating marriage. There was a divorce finally, with the youngest child, a boy, as well as the two girls removed from Mrs. Roome's care. First Tori and then her sister left home and joined their mother. Mrs. Roome, however, was not well and the two girls, particularly Tori, tried to handle the situation. These details are all critical to any reading of Tori's record. That she was able to accomplish the work at all is a testimonial to Tori's determination, her innate ability and serious commitment to education.

"A severe breakdown requiring hospitalization prevented Tori from entering her junior year. We had made special schedule arrangements to take care of her failure in mathematics. After she had recovered we kept in touch with Tori. On my advice she applied and was accepted at Friends Seminary, since she wished to make a fresh start. Although she did not complete the year there, she persisted in her efforts to pursue an education and has achieved a Regents Diploma. She came to see me recently, and I am convinced that she is one of the most remarkable young women who has attended this School. She is honest, optimistic — and yet realistic — about her background. She has splendid potential, a creative spark and an intellectual bend. She is purposeful about her education, her life and ultimate contribution in the adult world. Tori is concerned about her younger sister, rejoices for the rehabilitation of her mother and accepts the rejection of her father now and while she went through her emotional trial.

"At this point of time I am confident she is ready for college. She will need an environment which is nurturing and responsive. I have urged her to make application to institutions which satisfy her needs, both intellectually and personal.

"I recommend her to you as a young woman who is worthy of special review. She is someone we are proud to claim and who in the long run has talents and abilities which will be important to the well-being of others.

"I will be happy to talk to you further about her if this would help you evaluate Tori.

"(Mrs. Charles G. Berendsen)
"Headmistress"

of the stipulation between the parties discloses that defendant is correct in his assertion that he never agreed in such stipulation to pay the college tuition for his two daughters. However, the stipulation acknowledges that the children are the recipients of a private primary and secondary school education and is instinct with the realization that the children might well attend college and even board at such institution of higher education. In pertinent part the stipulation provides: "f) Notwithstanding the foregoing, if a child, when reaching 21 years, shall be attending college on a full-time basis, and is unmarried and otherwise unemancipated, support for that child shall continue until the child's college education terminates, is no longer full-time or the child reaches the age of 22 years, whichever occurs first. 6. The defendant agrees that he shall continue to pay all reasonably necessary expenses for the private schooling of each of the children, (in both elementary and secondary schools, as the case may be) * * * When a child is in actual attendance at a residential school or college and the father is paying the child's food and lodging expenses there, the child support payment shall be reduced to $60.00 per week [from $75.00 per week], for such period of attendance". Nowhere in the stipulation is there an agreement between the parties that the plaintiff waived her right to seek payment of college expenses from defendant. We are not asked herein to disturb a negotiated settlement; we are asked to consider whether the support provisions of the judgment of divorce are adequate in light of the children's current needs. "[M]inor children are not parties to a separation agreement executed by their parents, and the courts are not bound by the support provisions contained in a separation agreement but are required to provide for the support and welfare of minor children as justice requires" (*Moat v Moat,* 27 AD2d 895, 896). As aptly noted by the Court of Appeals in *Laumeier v Laumeier* (237 NY 357, 364): "The husband did not divorce his child, or dissolve his liabilities to it. And what are those rights? The child is entitled to the support and maintenance by its father." A fair interpretation of the stipulation and judgment is that the stipulation did not bind either party to pay college expenses and that either party might seek later an order compelling payment (see *Connolly v Connolly,* 83 AD2d 136). "Absent unusual circumstances * * * or voluntary agreement, the furnishing of a private college education to one's children is not within the purview of necessities for which a father can be obligated" (*Tannenbaum v Tannenbaum,* 50 AD2d 539-540, citing *Matter of Berland v Berland,* 47 AD2d 540; *Matter of Hawley v Doucette,* 43 AD2d 713). In *Kaplan v Wallshein* (57 AD2d 828), the appellate court was concerned with the plaintiff wife's application to have the child support increased to require the defendant husband to pay college expenses. That court declared (p 829): "The factors relevant to the determination of 'special circumstances' are threefold: (1) the educational background of the parents; (2) the child's academic ability; and (3) the father's financial ability to provide the necessary funds (*Matter of Kotkin v Kerner,* 29 AD2d 367; *Zuckerberg v Zuckerberg,* NYLJ, April 28, 1976, p 13, col 4; *Herbert v Herbert,* 198 Misc 515, 517; *Matter of Weingast v Weingast,* 44 Misc 2d 952, 953)". In *Connolly v Connolly* (*supra,* at p 141), we noted that "[i]n *Matter of Kotkin v Kerner* (29 AD2d 367) this court, noting Family Court's finding that removal of the child from private school would not be in his best interests, affirmed its direction that a father pay part of the costs of his son's private schooling where the child had a good academic record and, as here, had been attending private schools * * * In appropriate circumstances other courts have not hesitated to direct a parent to pay private school or college expenses. (See *Frankel v Frankel,* 82 AD2d 796; *Weseley v Weseley,* 58 AD2d 829; *Matter of Thaler v Klein,* 55 AD2d 606; *Matter of Weymann v Weymann,* 51 AD2d 768; *Hahn v Hahn,* 40 AD2d 624, 625.)" It is clear that Special Term erred in its view that it

was without power to direct contribution by the defendant father to make college expense payments as it had such power under the special circumstances test enunciated above, guided at all times by what is in the child's best interest. Indeed, and this reflects favorably on defendant, he, in effect, acknowledged that special circumstances might well warrant his contributing to his daughters' college expenses. Defendant declared: "However, I do have my daughters' best interests in mind and would be more than willing to seek a resolution of this matter with the Court's assistance. I would respectfully request that the Court consider all of the relevant factors, including the extent of my former wife's contribution to these expenses, and the efforts of the children themselves to earn or otherwise bear a portion of the expenses. Consequently, I * * * request that this case be set down for a conference to determine * * * the issue herein * * * I have no intention of avoiding any of my obligations as it is determined by this Court that I must meet." We recognize that the cases which cast the duty of support upon the father alone must now be read to place a commensurate duty upon the mother. Further, respect for the standard of living maintained by the parties prior to the dissolution of the marriage, especially as it pertains to the type and quality of education of the children and due regard for the dynamic of changing social and educational circumstances, mandate recognition of the responsibility of the parent or parents to furnish the child who issued from the marriage an appropriate college education where warranted in the child's best interest. The test set forth in *Kaplan v Wallshein (supra)* and *Connolly v Connolly (supra)* as reflective of the required special circumstances is a recognition of these considerations. Cases relevant to the issue of child support should be viewed in the context of surrounding economic, social and educational factors, which factors, of necessity, are not static. The current background of high inflation, changing educational standards in respect of quality and curriculum and other relevant considerations must be taken into account. In the circumstances presented here, it is clear that at least two of the considerations set forth in *Connolly v Connolly (supra)* have been met, to wit, the educational background of the parents and the academic ability of the children (the two daughters). By virtue of his occupation, defendant is clearly the product of advanced education, both at the college and postgraduate level. The academic ability of the two girls has already been alluded to. Only the defendant's financial wherewithal is in doubt since the record does not disclose his actual current financial status. Indeed, the defendant does not dispute the existence of special circumstances. As already noted, in acknowledging that the court should apportion the responsibility between the parties and also take into account the children's efforts to bear a portion of the educational expenses at college, defendant, in effect, concedes an obligation to pay (see *Connolly v Connolly, supra*). This matter should be remanded to allow for discovery of the defendant father's current income and assets and for an evidentiary hearing, if necessary, as to the defendant's ability to pay. Other considerations, such as the plaintiff wife's ability to contribute, may be explored. Regarding Special Term's denial of plaintiff's application for contempt, it is concluded that Special Term was correct. Special Term granted plaintiff a money judgment for the medical and private secondary school expenses as aforesaid. The basis for the denial was recognition that defendant "is a surgeon of substance." It is well recognized that "[w]here the husband, in an action for divorce * * * makes default in paying any sum of money as required by the judgment or order directing the payment thereof, and it *appears presumptively* to the satisfaction of the court that payment cannot be enforced by means of the sequestration of his property, or by a wage deduction order, or by docketing a judgment for arrears * * * the

wife may make application pursuant to the provisions of § 756 of the Judiciary Law to punish the husband for contempt" (19A Carmody-Wait 2d, NY Prac, § 118:120, emphasis supplied). In the present case, that does not appear (see *Covello v Covello*, 68 AD2d 818). Accordingly, the order, Supreme Court, New York County (Shainswit, J.), entered October 16, 1980, which, *inter alia,* denied plaintiff's application to punish defendant for contempt and to direct defendant to pay for the college tuition and expenses of the parties' daughters, insofar as appealed from, should be modified, on the law and the facts, without costs and disbursements, to the extent of reversing the denial of plaintiff's application as it relates to the college tuition and related expenses, and plaintiff's motion granted to the extent of remanding the matter for discovery of plaintiff's income and assets and an evidentiary hearing, if necessary, to determine whether plaintiff should pay the expenses of the college education of his daughters, Victoria and Loretta, and, as so modified, affirmed.