OPINION OF THE COURT
Arthur D. Spatt, J.
Is a divorced father’s philosophical belief that his children should “work their way through college” a viable defense to an application to compel him to pay for their college educations where the law clearly requires such payments on his part? Stated otherwise, if a divorced father believes in a policy of “self-reliance” on the part of his children, can he nevertheless be compelled to pay for their college educations where “special circumstances” exist?
FINDINGS OF FACT
The parties were married on July 2, 1960, and divorced on January 7, 1975. Five children were bom to the parties. Both parties subsequently remarried; the respondent in April 1975, the petitioner in December 1983.
Although petitioner initially had custody of all the children, all of whom lived with her at that time, at the present time only Theresa resides with her. Mary lives in her own apartment, George lives in Virginia where he attends college and both Jeanne and Catherine live with their father, the respondent herein.
*601 The petitioner is a teacher by profession. Petitioner received a bachelor’s degree in home economics from Cornell University in January 1960 and a master’s degree in guidance from Hofstra University in January 1965. Following her divorce, petitioner worked continuously as a substitute teacher for three years and as a full-time teacher for six years.
The respondent is 46 years of age and graduated from Cornell University with a bachelor’s degree in industrial and labor relations. He is employed by the International Telephone & Telegraph Company as Director of Training and Development. The respondent’s Federal income tax returns show his gross wages as follows:
1981
1982
1983
$146,666
$109,241
$120,307
From January 1, 1984 to July 16, 1984, respondent had gross earnings of $63,000.
The court finds that both parties are college educated and college oriented, and both attempted to imbue in their children an appreciation for a good education, including a higher education.
As to the educational background of the children, the evidence revealed that each of the children attended private elementary and high schools at one time, and presumably all but Catherine were graduated or will graduate from private schools. All received in the past and are presently receiving excellent school grades. Daughter Mary received a degree from the University of Rochester with high grades. George is presently in his final of five years at the University of Virginia and is also receiving high marks. George’s tuition is being paid by his own employment and by grants and loans.
Jeanne attended Holy Cross University in Massachusetts but was unable to continue due to financial inability. She attended for one semester in the fall of 1983 and received A’s, B’s and one C for that semester. After Jeanne came to live with the respondent in Connecticut in January 1984 she attended the University of Fairfield in early 1984 and then enrolled in Norwalk Community College. She lives at home with respondent. In January 1982 Jeanne was involved in an accident in which she was seriously injured. She is presently under the care of a psychiatrist and would like to continue her schooling in Connecticut and continue to see the psychiatrist. Catherine attended private high school on Long Island until the fall of 1983 *602 and now attends public high school in Greenwich, Connecticut. According to petitioner, Catherine is an honor student and received grades in the high nineties.
The evidence reveals that all the children were encouraged to do well in school; that all excelled in school; and all were expected to attend college. The respondent conceded that all his children are “A” and “B” students, some are honor students and that their high grades qualify all of them for college. Curiously, he declined to answer whether he wants his children to go to college and evaded answering whether he encouraged them to attend college.
The petitioner states that she has encountered considerable financial difficulty in sending her children to college. She contributed $4,000 to her daughter Mary’s college education, $2,000 to her son George’s college education and $3,000 for her daughter Jeanne’s college education at Holy Cross. Although the respondent paid for the part-time classes Jeanne took at Fairfield and lent George $2,000 for a special program in Denmark, $1,000 of which has been repaid, he has not contributed any other funds directly for the college education of his children. The petitioner seeks to have the respondent pay for the college education of George and Jeanne. The separation agreement and divorce decree are silent as to provision for college education.
AS TO RESPONDENT’S OBLIGATION TO PROVIDE FOR
THE COLLEGE EDUCATIONS OF GEORGE AND JEANNE
Since there was no voluntary agreement concerning payment of college expenses, the court must determine whether “special circumstances” exist so as to warrant such a direction to the respondent. It is well settled that the inquiry concerning the existence of “special circumstances” must focus on four factors:
1. The educational background of the parents
2. The environment in which the children grew up
3. The children’s academic ability, and
4. The parents’ ability to provide the necessary funds.
(See, Frankel v Frankel, 82 AD2d 796 [2d Dept 1981]; Gamble v Gamble, 71 AD2d 649 [2d Dept 1979]; Kaplan v Wallshein, 57 AD2d 828 [2d Dept 1977].)
The court finds that such “special circumstances” are evident with respect to George and Jeanne. It is abundantly clear that all four factors are met; namely, both parents have degrees from an outstanding university; their environment placed a high value on education; all of the children have excellent academic *603 records which indicate both ability and desire for a higher education; and the respondent has the ability to provide the necessary funds.
Thus, the petitioner has established that the “special circumstances” requisite for an order directing the respondent to pay for the college educations for George and Jeanne are present in this case.
In defense of this application, respondent raises a novel defense not addressed in any of the cases in this field. He testified that he believes that his children should pay for their own college educations, not for selfish, financial reasons, he asserts, but because he feels they will become more self-reliant and appreciative of their education from the experience of “working their way through college”. This court has reservations concerning whether this theory has been advanced for altruistic reasons or because it would spare respondent from paying for his children’s college educations. This is especially so since the respondent has only recently advanced this “self-reliance” theory.
However, respondent has apparently followed this approach with his daughter Jeanne who, while living with her father, is attempting to pay, in a modest manner, for her own schooling. Respondent further testified that he assisted George in paying for part of his senior year in college, but reached an agreement with him as to repayment.
The question presented is, should this court enforce the settled rule of Kaplan v Wallshein (supra), and direct that respondent pay for his children’s college education in the face of his objection on philosophical grounds? Though respondent has had little input heretofore in his children’s upbringing, both Jeanne and Cathy presently reside with him, so that he is entitled to have an influence in the direction of Jeanne’s education. (See generally, Noncustodial Parents Rights as Respects Education of Child, Ann., 36 ALR3d 1093.)
However, until recently, petitioner raised all five of her children and assisted Mary, George and Jeanne with their college tuitions. The mere fact that Jeanne is currently residing with her father cannot totally silence petitioner’s voice as to Jeanne’s education. Thus, in light of the totality of circumstances in this case, both parents’ wishes must be taken into consideration.
Moreover, although Jeanne stated that she was familiar with and agreed to her father’s theory of “self-reliance”, she expressed the desire to obtain a college education while continuing *604 her therapy. If she remains a student of the Norwalk Community College, she could live at home and continue seeing her psychiatrist.
Ideally, decisions as to college education should be arrived at through consensus between the parents and the child. This court has been thrust into the vortex of this interparental skirmish involving significant differences of opinion. Paramount to all else is the best interests of the children. It is clear that the best interests of the children in this case is for them to pursue and complete their college educations.
The court cannot ignore the fact that although Jeanne testified that she agrees with her father’s philosophy of “self-relionce” and is apparently not unsatisfied with the community college education she is currently receiving, her entire educational background has evolved in the area of private education. Additionally, she did complete one semester at Holy Cross, the college of her choice, and wished to continue there but could not, due to financial inability. Since their early school days, the preference for private school education has been ingrained in these children. Jeanne’s scholastic achievements indicate the appropriateness of a private college education for her. George comes from the same circumstances and is currently in his fifth year at the University of Virginia. George was unable to graduate within four years, due at least in part to the fact that he had to work to pay for his tuition.
The court is aware of the principle set forth in Matter of Roe v Doe (29 NY2d 188 [1971]), in which the father’s reasonable requests, regulations or restrictions in connection with his daughter’s schooling were recognized, (See also, Bethune v Bethune, 60 AD2d 588 [2d Dept 1977].) The court must, therefore, avoid any unwarranted intrusion into parental rights of child rearing. The case at bar, however, is significantly different from Roe which involved the father of a daughter attending an out-of-State college who withheld support from her because she refused to reside in the on-campus dormitory and, instead, lived off campus. The Court of Appeals upheld the father's refusal on the grounds that a child’s right to support and the parent’s right to custody and services are reciprocal; in return for maintenance and support, the parent may establish and impose reasonable regulations with regard to the conduct and activities of his child.
In the instant case, we have a father whose “self-reliance” philosophy is opposed by the mother’s sincere desire that her children receive a college education in accordance with their scholastic ability and the environment in which they were *605 raised. The testimony reveals a herculean effort on her part to insure that all her children attended private schools. Despite having lived through some traumatic experiences, Jeanne appears to be an intelligent and well-intentioned young woman, unlike the failing student demanding funds to maintain an off-campus apartment in Roe (supra). Jeanne and George are bright and successful students whose parents have divergent views on the method of achieving their college educations. The regulations respondent seeks to impose, particularly with respect to Jeanne, would be tantamount to her being unable to attend the college she is best suited for.
The court finds that the “self-reliance” defense interposed by the respondent, even if interposed in good faith, cannot serve to spare him from paying for the college educations of his children. Under the criteria in the Kaplan v Wallshein rule (supra), he is liable for that obligation. To allow him to avoid such an important obligation for the future well-being of his children would serve to permit a purely subjective, somewhat self-serving philosophy to overcome a basic and.established constructive rule of law. Moreover, the validation of such a subjective standard could open the door for similar defenses in virtually every such case.
Also, the court takes note of the present substantial cost of private education. It would be almost impossible for a young person like Jeanne to be able to earn sufficient moneys to support her own college education. Whatever discipline may be gained by her in the “self-reliance” way of life must give way to the pragmatic truth that she is an excellent student who is entitled, if she wishes, to a good private college education, which schooling can easily be paid for by her father.
Accordingly, the respondent is directed to pay in full for the cost of Jeanne’s education during the time she attends the Norwalk Community College. Upon completion of her studies at Norwalk Community College, or at any time she wishes to transfer prior to completing her education at that school, Jeanne shall be entitled to attend a college or university of her choice, including Holy Cross University, Villanova University or the University of Fairfield (schools which have accepted her), or any other equivalent university. When she attends such private school, the respondent is directed to pay all the tuition, room, board, books and other similar reasonable expenses for such schooling, less any scholarship or grant funds paid on her behalf. In this regard, Jeanne can supplement these costs with part-time work, provided such employment does not interfere with her studies.
*606 With respect to George, his school costs for his final year, as outlined above, should receive similar treatment. The court notes that George has managed to attend the University of Virginia with limited assistance from his mother and, recently, from his father, together with funds from grants and loans. George shall continue to work and pay for part of his schooling. The balance of such cost shall be paid for by the respondent.