OPINION OF THE COURT
John D. Doyle, J.
Support obligations of divorced parents to a child of the marriage has, over the years, come to encompass more than food, clothing and shelter. The extent of the child support obligation will often rise and fall based on the "changed circumstances” of the parents and child. A child’s attendance of college, however, is not a change of circumstances contemplated by law to warrant an increase in child support to pay tuition. Rather, the child’s attendance may create an additional support obligation for college support. While some jurisdictions view college support as an extension of child *702 support, others rely on a set of equity principles on a case-by-case basis to determine the amount of, and distinguish college support from child support. New York State courts prescribe to the latter and will direct parents to provide college support where special circumstances exist.
Here, the parties in Hoffman and Morphet raise the issue of college support regarding the applicability of the special circumstances standard and the actual need for college support in their respective cases. In addition, the noncustodial parents currently paying child support contend that their child support payments should be reallocated to help pay tuition or, alternatively, modified downwards if directed to pay college support. This court must first lay out the college support standard and its application to each case at bar before it can determine the amount of college support to be paid and what modifications must be made, if any, to the present respective child support obligations.
COLLEGE SUPPORT
Today children are groomed at early age to compete whether it be on the athletic field or in the classrooms. Often they are encouraged to pursue education beyond high school not only, or exclusively, by parents, but by educators and the child’s peers as well. Indeed, advanced education may be the key to success in many fields today. (Smith, Educational Support Obligations of Noncustodial Parents, 36 Rutgers L Rev 588, 589 [1984].) The common-law basis for college support is founded in the theory that college constitutes a legal necessary. (Id., at 591.) In one case, a court cited such factors as a State’s support of higher education manifested by a multitude of State supported institutions and the fact that the college graduate is no longer the exception, but the rule. (Id., at 595, n 28 [citing Esteb v Esteb, 138 Wash 174, 244 P 264 [1926].) Courts following the common-law college support doctrine view the obligation as child support. (Id., at 588, n 11.) New York has chosen not to follow the common-law approach and has instead relied upon equity principles to determine the college support obligation. (See, Roome v Roome, 87 AD2d 798, 801 [1st Dept 1982]; Matter of Cooke v Pieters, 123 Misc 2d 351, 352 [Monroe County 1984].)
At first blush, New York courts appear to have settled the issue of whether a divorced parent may be directed to contribute to the college expenses of their children of the marriage. *703 Absent a voluntary agreement to furnish such expenses, a petitioner requesting college expenses must prove the existence of special circumstances. (Connolly v Connolly, 83 AD2d 136, 140 [1st Dept 1981].) In 1978 a court considered the following circumstances exceptional and ordered the noncustodial parent to provide college support:
"1. Both parents are college graduates. In fact, the father has received extensive postgraduate professional education. (Cf. Kaplan v Wallshein, 57 AD2d 828.)
"2. Both parents can clearly afford to support the children through college, including sending them to private universities. (Cf. Matthews v Matthews, 14 AD2d 546, supra; K. v K., 83 Misc 2d 911, supra; Kaplan v Wallshein, supra.)
"3. The two oldest children are attending college, having enrolled while the father was still a member of the household.
"4. The children have sufficient academic ability to go to college. (Cf. Kaplan v Wallshein, supra.)
"5. The children have attended private college preparatory high schools.
"6. The children have been raised in an economic environment where it would be unreasonable for them to expect that their parents would not see to their financial needs at least through college. (Cf. K. v K., supra.)
"7. The children have been raised among other children and socialized in a setting where it would be unusual for them not to go to college.
"8. The children have never been denied anything, no matter how extravagant, as long as their parents have had ample resources. (Cf. K. v K., supra.)
"9. In their cultural, social and economic background, a college degree is a prerequisite for suitable employment in the competition for present day living. (Cf. K. v K., supra.)” (Lord v Lord, 96 Misc 2d 434, 439 [NY County 1978].)
"Special circumstances” has become a vehicle by which a court may direct divorced parents to provide their minor child with a college education absent an agreement regarding contribution. (Connolly v Connolly, supra; Roome v Roome, supra.) The standard also enables courts to direct college contribution after the statutory emancipation age of 21 years. (Lord v Lord, supra; Smith, op. cit., at 625.)
In a more perfect world, parents and children determine the need for education beyond high school. Where courts are *704 asked to decide, the best interests of the child prevail. (Dugan v Dugan, 126 Misc 2d 600, 604 [Nassau County 1984]; see also, Matter of O’Shea v Brennan, 88 Misc 2d 233 [Queens County 1976].) In the past, and to some extent today, a parent’s social status and educational background gave courts a means to determine best interests. (Smith, op cit, at 598-599.) This approach forced courts to focus on the parents. The best interests of the child depended upon what the parents bought in terms of elementary education and material objects, what neighborhood the parents could afford to live in and what social circles the parents were qualified to move in. Thus, the child who possessed sufficient academic ability, but whose parents failed to meet the above criteria, was not afforded the opportunity to seek education beyond high school with financial support from his divorced parents.
In the late 1960’s, courts began rejecting the notion that a child’s educational opportunities should be dictated by the parent’s station in life. (Smith, op. cit., at 600.) New York courts have judiciously pruned the Lord nine-point standard heavily emphasizing the social status of the parents to a three-prong standard in Connolly (supra). There the court found special circumstances existed and ordered that Supreme Court conduct a hearing to determine the parents’ ability to pay. (Connolly v Connolly, supra, at p 141.) These circumstances were:
" '(1) the educational background of the parents;
" '(2) the child’s academic ability; and
" '(3) the father’s financial ability to provide the necessary funds.’ (Kaplan v Wallshein, 57 AD2d 828, 829).” (Supra, at p 140.)
Connolly eliminated most of the emphasis on the parents and focused on the needs of the child and the resources available. Further judicious pruning of this three-prong standard is necessary before New York courts will be absolutely free to act in the best interests of a child in all cases. The two cases at bar illustrate the remaining inequity due to the last vestige of the old "Lord” approach still present in the Connolly standard.
In Hoffman, both parents possess not only undergraduate degrees, but advanced degrees as well. As a result, under the special circumstances standard as enunciated in Connolly (supra), this court may proceed to determine whether or not *705 the Hoffman children possess sufficient academic ability to succeed in college. In King, however, defendant father has only recently completed one year of college on a part-time basis and plaintiff wife possesses a high school diploma. Under these circumstances this court may not even consider whether the parties’ son possesses sufficient academic ability to succeed in college nor may this court consider what financial resources the parties have to support their son in college. Despite the fact that college may be in the best interests of the son in the King case, the application of the Connolly standard and the fact that his parents possess only high school degrees prevents this court from acting in his best interests.
Courts have recognized the importance of insuring equal opportunity for college education for children from broken homes as necessary to overcome the competitive disadvantage likely to be suffered at the hands of children from homes where both parents still reside. (Smith, op. cit., at 602-603.) Children from broken homes already possess a distinct disadvantage in having suffered through the trauma of divorce. Courts are often charged with exercising the parental instincts parents seem to lose after a divorce. (Ibid.) One such natural instinct is seeing that a child lay the proper foundation for future success. "Education is an integral part of our society and as our society has developed in new and varied directions, the educational needs of our children have grown and changed. While a formal elementary education was once adequate for life, more advanced education, including graduate studies, is the sine qua non for entry, if not success, in certain fields of endeavor today. This expansion in educational need has been paralleled by expansion in the nature and duration of educational support provided by parents”. (Smith, op cit., at 589.)
A court’s determination whether education is in the best interests of a child for his or her future success should not depend upon what advantages or disadvantages his or her parents possessed when they had their own opportunity, before the child was born, to attend college. The evolution of the college support standard in New York from Lord (96 Misc 2d 434, supra) to Connolly (83 AD2d 136, supra) must not end at Connolly. The educational background of the parents’ factor harkens back to the past when a parent’s social status determined his or her child’s status and opportunities and is no *706 longer relevant. This court shall determine whether special circumstances exist based only on the remaining two factors.*
Neither party in either Hoffman or King raises the issue of insufficient academic ability as proof that college support may not be ordered by this court. The Hoffman children presently attend University of Kansas and New York University and the King child attends Finger Lakes Community College. Plaintiffs in both cases have also asked for a declaration of the noncustodial parent’s obligation for college support for children still in high school. E. Hoffman is presently a senior who is an honors student. K. Morphet is a junior who shows exceptional athletic ability and maintains a C average. This court finds indicia of sufficient academic ability on the part of all the children in both cases to warrant a determination of the second factor of the college support standard.
The final factor according to Connolly (supra) is the financial ability of the father to provide the necessary funds. (Supra, at p 140.) As in Connolly, defendants in Hoffman and King contend that college support is the responsibility of both parents. Under current law, both parties are under an equal obligation to support their children. (Domestic Relations Law § 32 ["Parents liable for support of their child”]; Family Ct Act § 413 ["the parents of a child under the age of twenty-one years are chargeable with the support of such child and * * * may be required to pay for such child’s * * * education”]; Connolly v Connolly, supra, p 141.) Thus, this court must consider the financial ability of both the custodial and noncustodial parents in each case.
In Hoffman, the parties were divorced on April 14, 1982. The decree incorporated an agreement between the parties which, unfortunately, fails to address the issue of college support. Both parties managed to fund the balance of the eldest daughter’s college education and the first years of G. R. Hoffman’s education after their separation and divorce at a time when plaintiff’s income was only one half of what it is now. Clearly, both parties possess an ability to pay, however, this court does not possess adequate financial information to apportion the cost of college support. Both parties have alleged sufficient factual disputes arising out of financial disclosure to date to entitle them to a hearing on the apportion *707 ment of the expenses. The parties in King are essentially in the same position as both have alleged inaccuracies and errors in the calculations of their respective incomes. Defendant, in fact, has subpoenaed additional financial information. Defendant also alleges an inability to pay college support beyond his prior cosigning of a loan for his son. Plaintiffs current financial statement shows a weekly deficit. A hearing is necessary, therefore, to determine ability to pay for college expenses in addition to an apportionment of the amount, if any. The King hearing will not encompass the issue of child support as the defendant Daniel Morphet has not requested a modification in the amount of child support he currently pays directly to his son each week. Defendant in Hoffman, however, has requested a modification and the Hoffman hearing will also take proof as to the need to modify child support.
CHILD SUPPORT
In response to plaintiff Hoffman’s motion for apportionment of college expenses, defendant cross-moved for a reduction in child support. Where the dispute concerns readjusting the respective obligations of parents for child support, the support provisions of an agreement between the parents should not be disturbed absent an unanticipated and unreasonable change in circumstances. (Matter of Brescia v Fitts, 56 NY2d 132, 139 [1982]; Matter of Boden v Boden, 42 NY2d 210, 213 [1977].) The parties signed and acknowledged their stipulation entered on the record in 1981 which the court later incorporated, but did not merge, into the judgment of divorce. Thus, the stipulation operates with the same force and effect as an opting out agreement under Domestic Relations Law §236 (B). (See, Stanfield v Stanfield, 100 AD2d 737 [4th Dept 1984].) The agreement obligates defendant to pay $300 per month per child. Defendant’s obligation shall continue pending the outcome of the hearing where proof of unanticipated and unreasonable change in circumstances will be entertained.
In addition, it appears defendant unilaterally reduced child support as of October 15, 1985 anticipating Gordon’s 21st birthday on October 19, 1985. A parent is legally responsible for the support of their child under 21 years of age unless the parents contract otherwise. (Domestic Relations Law §32; Jarvis v Jarvis, 99 Misc 2d 79, 81 [NY County 1978].) The parties agreed that child support shall be paid until each child becomes emancipated, yet they did not specify the emancipa *708 tion event. The did agree, however, that the eldest child would be considered emancipated due to her impending graduation from college. In the agreement, the parties associated college graduation with emancipation. Thus, defendant shall pay child support for each child until that child’s college graduation date. Defendant shall also remit to plaintiff all arrearages resulting from his unilateral reduction in child support.
CONCLUSION
Special circumstances allowing this court to award college support are the academic ability of the child and the parents’ financial ability to pay. Special circumstances exist in Hoffman in that all three children possess sufficient academic ability and that the parties have previously demonstrated an ability to pay, however, the apportionment of costs is referred to a hearing. Special circumstances exist in King to the extent that both children possess sufficient academic ability, but the financial ability of the parents to pay is unknown and is referred to a hearing where that determination and the apportionment of the costs, if any, will be made. As for child support, in Hoffman, that matter is also referred for a hearing except that this court has defined the emancipation event as the child’s college graduation day. Neither party in King requested a reduction in child support based on contributions to college expenses like in Hoffman. Plaintiff first attempted to obtain an increase in child support to cover college expenses, however, later addressed the appropriate standard for college support rendering the child support issue moot.

 It should be noted that no parent in either of the two cases argues that this particular factor is dispositive as to whether their son or daughter should attend college with their financial support.